# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ALFREDO CASTRO,<br><br>　　　　　　　Petitioner,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent. | CASE NO. 11-cr-323 – IEG<br>Related Case: 12-cv-1036 – IEG<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>[Doc. No. 26 in 11-cr-323] |

   Presently before the Court is a motion by Petitioner Carlos Alfredo Castro ("Petitioner") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. [Doc. No. 26.][1] Petitioner, a federal inmate proceeding *pro se*, seeks relief on several grounds, including claims of ineffective assistance of counsel. For the reasons given below, the Court, after due consideration, **DENIES** Petitioner's motion to vacate, set aside, or correct his conviction and sentence.

## BACKGROUND

   On December 30, 2010, Border Patrol agents arrested Petitioner near Calexico, California after he was seen entering the United States by climbing over the international boundary fence between the United States and Mexico. [Doc. No. 1.] The Government filed a complaint on

---

[1] Unless otherwise indicated, reference is to filings in 11-cr-323.

1  January 3, 2011 charging Petitioner with violation of 8 U.S.C. § 1326. [Id.]  Petitioner waived

2  indictment on January 27, 2011 and consented to being charged by information with violation of 8

3  U.S.C. §§ 1326(a) and (b); the information also alleged that Petitioner had been removed from the

4  United States after July 10, 2008. [Doc. Nos. 8-9.]

5  On February 24, 2011, Petitioner, pursuant to a plea agreement, pled guilty before a

6  magistrate judge to violation of 8 U.S.C. §§ 1326(a) and (b).  [Doc. Nos. 15-16.] In his plea

7  agreement, Petitioner admitted that he is "an alien and not a citizen of the United States . . . , [that

8  he received] an aggravated felony conviction . . . in violation of California Penal Code § 273.5(A)

9  . . . , [and that he] subsequently was lawfully excluded, deported and removed from the United

10 States to El Salvador on November 10, 2010 . . . ."[2]  [Doc. No. 16 at 2.] Petitioner also expressly

11 waived in the plea agreement any right to appeal or collaterally attack his guilty plea, conviction,

12 or sentence.  [Id. at 3.]  The Court subsequently accepted Petitioner's guilty plea and, on May 23,

13 2011, sentenced Petitioner to a term of imprisonment of 57 months, followed by a three-year term

14 of supervised release.[3] [Doc. Nos. 17; 23-24].

15 Petitioner brought the present timely motion on April 26, 2012. [Doc. No. 26.] On May 7,

16 2012, the Court ordered the Government to show cause why Petitioner's motion should not be

17 granted. [Doc. No. 273] The Government filed its response in opposition on June 1, 2012.  [Doc.

18 No. 31.]  Petitioner filed his reply on July 3, 2012.  [Doc. No. 32.]

19 Petitioner seeks relief on the grounds that (1) he received ineffective assistance of counsel

20

---

21  [2] On August 8, 1996, Petitioner was convicted of Corporal Injury to Spouse in violation of
22  California Penal Code § 273.5(a) in California state court and received a custodial sentence of 6 years.
    [Doc. No. 31, Ex. 2.]  On May 23, 2001, an immigration judge ordered that Petitioner be removed
23  from the United States pursuant to then 8 U.S.C. § 237(a)(2)(A)(iii); immigration officials carried out
    the order on August 22, 2001.  [Doc. No. 31, Exs. 1, 3.] On June 30, 2008, immigration officials in
24  Los Angeles discovered Petitioner was in the United States without permission. [Doc. No. 31, Ex. 5.]
    The Government subsequently charged Petitioner in the Central District of California with violating
25  8 U.S.C. §§ 1326(a) and (b)(2). [Id.] Following Petitioner's guilty plea, Judge Matz sentenced
    Petitioner on January 15, 2009 to a term of imprisonment of 30 months, followed by a three-year term
26  of supervised release. [Doc. No. 31, Ex. 6.] After immigration officials subsequently reinstated
    Petitioner's prior removal order, Petitioner was removed from the United States on November 10,
27  2010. [Doc. No. 31, Ex. 7-9.]

28  [3] At sentencing, the Court ruled Petitioner's instant offense had an adjusted offense level of
    19; because Petitioner was in Criminal History Category V, the Guidelines range was 57 to 71 months.
    [Doc. No. 30 at 15.]

1  ("IAC"); (2) his prior removals were invalid; and (3) the Court improperly calculated his criminal
2  history score and sentence in a variety of ways.[4] [Doc. No. 26.] The Government contends
3  Petitioner's claims are barred because Petitioner "knowingly and voluntarily waived his right to
4  appeal or collaterally attack his conviction and sentence" and that Petitioner's factual allegations
5  are refuted by the record. [Doc. No. 31 at 10.] Although several of Petitioner's IAC allegations
6  are irrelevant to whether he waived his right to collaterally attack his conviction and sentence, a
7  number of them challenge the knowing and voluntary nature of his plea agreement and its waiver
8  of his collateral attack right. Therefore, whether Petitioner knowingly and voluntarily waived his
9  right of collateral attack is determined by first examining the waiver provision in Petitioner's plea
10 agreement and then considering Petitioner's IAC claims attacking his plea agreement's validity.

## DISCUSSION

### I. Legal Standard for a Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255

Petitioner brings the present motion to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides that a federal prisoner seeking relief from a custodial sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783-84 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962) (internal quotation marks omitted). "Errors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief

---

[4] Specifically, Petitioner alleges that the Court erred by (1) enhancing the level of his instant offense by sixteen points for a prior aggravated felony conviction; (2) adding points to his criminal history score for three prior felony convictions and for being on supervised release at the time of the instant offense; and (3) refusing to grant his cultural assimilation motion. [Doc. No. 26 at 4-8.]

1  under § 2255." United States v. Wilcox, 640 F.2d 970, 973 (9th Cir. 1981).

2  "Unless the motion and the files and records of the case conclusively show that the
3  prisoner is entitled to no relief," the Court must hold an evidentiary hearing on the merits of a §
4  2255 motion.  28 U.S.C. § 2255(b).  The Ninth Circuit has stated the "standard is essentially
5  whether the movant has made specific factual allegations that, if true, state a claim on which relief
6  could be granted."  United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984) (per curiam).
7  Therefore, an evidentiary hearing is unnecessary if the allegations, "when viewed against the
8  record, do not state a claim for relief or are so palpably incredible or patently frivolous as to
9  warrant summary dismissal."  United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003)
10 (internal quotation marks omitted).  Similarly, if a "prisoner's motion presents no more than
11 conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is
12 not required."  United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986).

13 A defendant's past representations in open court "constitute a formidable barrier in any
14 subsequent collateral proceedings.  Solemn declarations made in open court carry a strong
15 presumption of verity. The subsequent presentation of conclusory allegations unsupported by
16 specifics is subject to summary dismissal, as are contentions that in the face of the record are
17 wholly incredible."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also Womack v.
18 McDaniel, 497 F.3d 998, 1004 (9th Cir. 2007) (finding it "reasonable . . . to reject [petitioner's
19 habeas] claim that his plea was not knowingly, voluntarily or intelligently entered . . . . [where
20 petitioner's] allegation is belied by his statements in open court and the contents of his signed plea
21 agreement.").

22 **II.    Waiver**

23 Courts generally enforce plea agreements containing knowing and voluntary waivers of
24 statutory rights of appeal or collateral attack because such "waivers usefully preserve the finality
25 of judgments and sentences imposed pursuant to valid plea agreements." United States v. Anglin,
26 215 F.3d 1064, 1066 (9th Cir. 2000).  A "defendant may waive the statutory right to file a § 2255
27 petition challenging the length of his sentence" but the defendant must (1) expressly waive the
28 right of collateral attack and (2) do so knowingly and voluntarily.  United States v. Pruitt, 32 F.3d

1  431, 433 (9th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993); United
2  States v. Leniear, 574 F.3d 668, 672 n.3 (9th Cir. 2009).  Further, even with an otherwise
3  seemingly valid waiver, a defendant cannot waive the statutory right to file a § 2255 petition
4  challenging the knowing and voluntary nature of the plea agreement and waiver because enforcing
5  the waiver would presuppose the very thing at issue: whether the waiver was valid in the first
6  place.  See Washington v. Lampert, 422 F.3d 864, 869-73 (9th Cir. 2005) (holding that a "plea
7  agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is
8  unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver.");
9  United States v. Racich, 35 F. Supp. 2d 1206, 1210 (S.D. Cal. 1999) ("a waiver does not bar
10 claims that relate to the validity of the waiver itself."); United States v. Contreras-Garcia, 2012
11 U.S. Dist. LEXIS 83282, at *3 (D. Ariz. June 15, 2012) (citing Lampert, 422 F.3d at 871) ("The
12 only claims that cannot be waived are claims that the waiver itself was involuntary or that
13 ineffective assistance of counsel rendered the waiver involuntary.").

14   Courts interpret plea agreements "using contract principles with any ambiguity construed
15 in the defendant's favor."  United States v. Watson, 582 F.3d 974, 986 (9th Cir. 2009).  The "scope
16 of a knowing and voluntary waiver is demonstrated by the express language of the plea
17 agreement."  Anglin, 215 F.3d at 1066.  Courts look to "the circumstances surrounding the signing
18 and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly
19 and voluntarily."  United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996).

20   Petitioner's plea agreement provides that Petitioner expressly "waives, to the full extent of
21 the law, any right to appeal or collaterally attack [his] guilty plea, conviction, and sentence, . . .
22 unless the Court imposes a custodial sentence above the greater of the high end of the guideline
23 range recommended by the Government pursuant to this agreement at the time of sentencing . . .
24 ."[5]  [Doc. No. 16 at 3.]  During a thorough Rule 11 colloquy with Petitioner prior to accepting his
25 guilty plea, the magistrate judge discussed this waiver provision with Petitioner and received
26 confirmation from both Petitioner and his counsel that he understood it and the remainder of his
27

28   [5] The Court imposed a custodial sentence of 57 months, which is at the low end of the Guideline range recommended by the Government. [Doc. Nos. 20 at 2; 30 at 14-16.]

1  plea agreement. [Doc. No. 29 at 8-9.] Petitioner's claims collaterally attacking his guilty plea,
2  conviction, and sentence in his present § 2255 motion thus fall within the scope of the express
3  language of the waiver provision. Accordingly, Petitioner, by his plea agreement and his
4  representations in open court, waived his right to collaterally attack his guilty plea, conviction, and
5  sentence.

6       Nonetheless, Petitioner alleges that his counsel's ineffective assistance rendered his waiver
7  invalid because it was not knowing and voluntary. Therefore, whether Petitioner's waiver is valid
8  must be determined by considering the merits of his IAC claims challenging the knowing and
9  voluntary nature of his waiver. See Lampert, 422 F.3d at 869-73; Contreras-Garcia, 2012 U.S.
10  Dist. LEXIS 83282, at *3-4.

11  **III.   Ineffective Assistance of Counsel Challenges to Validity of Waiver**

12       A petitioner alleging ineffective assistance of counsel must show that (1) "counsel's
13  performance was deficient"; and (2) the "deficient performance prejudiced the defense."
14  Strickland v. Washington, 466 U.S. 668, 687 (1984); Hill v. Lockhart, 474 U.S. 52, 57 (1985)
15  (ruling Strickland test "applicable to ineffective-assistance claims arising out of the plea
16  process."). "In the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged
17  ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and
18  voluntary plea of guilty. To succeed, the defendant must show that counsel's assistance was not
19  within the range of competence demanded of counsel in criminal cases and that the defendant
20  suffered actual prejudice as a result." Lambert v. Blodgett, 393 F.3d 943, 979-80 (9th Cir. 2004).
21  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for
22  counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
23  Hill, 474 U.S. at 59. "The proper measure of attorney performance remains simply [objective]
24  reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-689. However,
25  "[j]udicial scrutiny of counsel's performance must be highly deferential [because it] is all too
26  tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence,
27  and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to
28  conclude that a particular act or omission of counsel was unreasonable." Id. For this reason, there

1  is a "strong presumption that counsel's conduct falls within the wide range of reasonable
2  professional assistance. . . ." Id. Finally, "there is no reason for a court deciding an ineffective
3  assistance claim to . . . address both components of the inquiry if the defendant makes an
4  insufficient showing on one." Strickland, 466 U.S. at 697.

5       Petitioner brings two claims of IAC that challenge the knowing and voluntary nature of his
6  waiver of his right to collaterally attack his conviction and sentence.  He alleges his counsel was
7  ineffective because she (1) did not properly advise him of the possible charges, penalties, and
8  immigration consequences he faced; and (2) allowed him to plead guilty to an offense Petitioner
9  was not charged with violating. [Doc. Nos. 26 and 32.]  The record before the Court, however,
10 shows that Petitioner's waiver was knowing and voluntary and that Petitioner's allegations to the
11 contrary are wholly without merit.

12      For his first IAC claim, Petitioner vaguely alleges in his § 2255 motion that his counsel
13 failed to properly advise him of the charge and penalties facing him. [Doc. No. 26 at 6.]  In his
14 reply brief, Petitioner improperly alleges for the first time that his counsel never discussed 8
15 U.S.C. § 1326(b)(2) with him or informed him that the level of his instant offense was being
16 enhanced by sixteen points due to his removal from the United States following a prior aggravated
17 felony conviction.[6]  [No. 32 at 3-4.] These allegations are not credible in light of the record,
18 however.  Both the plea agreement and the magistrate judge informed Petitioner of the charge
19 against him and its elements and that by pleading guilty he faced a statutory maximum penalty of
20 "twenty years imprisonment, a $250,000 fine, supervised release of not more than three years and
21 a mandatory $100 penalty assessment." [Doc. Nos. 16 at 1; 29 at 6-7.] Similarly, the sixteen point
22 enhancement Petitioner objects to in his reply is clearly stated in his plea agreement both as part of
23 the factual basis for his guilty plea as well as in the parties' agreed upon Guidelines calculations.
24 [Doc. No. 16 at 2.]  The plea agreement contains a clause providing that by signing the agreement
25 Petitioner was certifying he had read the agreement (or had it read to him), discussed it with his
26 counsel, and fully understood its "meaning and effect." [Id. at 4.]  Before entering his guilty plea,

---

[6] Ordinarily, "arguments raised for the first time in a reply brief are waived." Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010).

1 Petitioner and his counsel swore at his change of plea hearing that Petitioner had read the plea
2 agreement in its entirety, signed and initialed it on each page, discussed it "thoroughly" with his
3 attorney, and gone over with her the relevant sentencing guidelines and how they might apply to
4 him. [Doc. No. 7-9.]

5 Moreover, Petitioner's counsel openly discussed with the Court at sentencing the sixteen
6 point enhancement and its applicability to Petitioner. [Doc. No. 30 at 11.] Petitioner subsequently
7 spoke at length to the Court yet never expressed any surprise, confusion, or objection regarding his
8 counsel's references to this enhancement. [Id. at 15.] Even after the Court expressly mentioned
9 the enhancement in its oral rendering of judgment, Petitioner made no objection. [Id. at 14-16.]
10 Though he alleges now he was never informed of the enhancement, Petitioner's "earlier silence
11 refutes his present allegations." Watts v. United States, 848 F.2d 275, 278 (9th Cir. 1988) (per
12 curiam) (finding the court did not err in dismissing the § 2255 motion without an evidentiary
13 hearing because "[it] is impossible to believe that if Watts had thought he was to receive a
14 sentence of no more than 20 years rather than the life sentence he was given, . . . he would not
15 have mentioned this obviously relevant inconsistency in his Rule 35 motion and in his
16 correspondence with Judge Duenas."). Accordingly, when viewed against this record, Petitioner's
17 allegations here are so palpably incredible that his claims are subject to dismissal. See Leonti, 326
18 F.3d at 1116; Womack, 497 F.3d at 1004.

19 Petitioner also alleges that his counsel failed to inform him of the "clear immigration
20 consequences" of his guilty plea, in violation of her duty under Padilla v. Kentucky, 130 S. Ct.
21 1473 (2010). [Doc. No. 26 at 6.] Petitioner contends his guilty plea was therefore not knowing or
22 voluntary. [Id.] Petitioner, however, never makes any specific factual allegations explaining what
23 immigration consequences he was not informed of by counsel.[7] Petitioner's allegation is also
24 undercut by the fact that Petitioner confirmed before entering his guilty plea that he was
25 stipulating to being removed from the United States following his imprisonment for the instant
26 offense, thereby revealing an understanding that his guilty plea would have severe immigration

---

28 [7] Indeed, it is not clear Petitioner truly seeks to bring a Padilla claim because the few facts alleged in support have no bearing on whether his counsel informed him of the immigration consequences of his plea.

1 consequences for him. [Doc. No. 29 at 6-7.]

2 As his second IAC claim, Petitioner alleges that his counsel was ineffective in allowing him to plead guilty to a crime he was not charged with, which caused him to receive a sentence greater than he should have. [Doc. No. 26 at 6.] This IAC claim also must fail in light of the record. In his § 2255 motion, Petitioner alleges that his counsel was ineffective because she allowed him to plead guilty to §§ 1326(a) and (b)(2) when the indictment only charged him with violating § 1326. [Id.] Petitioner goes on to allege that, if not for this error on his counsel's part, he would only have faced a maximum custodial sentence of 2 years under 8 U.S.C. § 1326. [Id.] Contrary to his allegations, however, Petitioner was not indicted for violation of § 1326; rather, he waived indictment and was charged by information with violation of §§ 1326(a) and (b).[8] [Doc. Nos. 8-9.] Moreover, because Petitioner was indeed charged with violation of §§ 1326(a) and (b), his allegation that he only faced at most 2 years of imprisonment also must fail. The record therefore conclusively refutes Petitioner's claim that his counsel was ineffective in this regard.

For the reasons given above, Petitioner's IAC claims challenging the knowing and voluntary nature of his guilty plea and waiver are without merit. Because Petitioner has presented no other grounds for his waiver's invalidity, the Court concludes Petitioner knowingly and voluntarily waived his statutory right to collaterally attack his conviction and sentence.

**IV.   Remaining Claims**

Petitioner's remaining claims do not challenge the knowing and voluntary nature of his guilty plea and waiver but rather attack his conviction and sentence on other grounds. Because these claims are within the scope of Petitioner's valid waiver, the Court will enforce it against him to bar these remaining claims.[9]

---

[8] Petitioner concedes as much in reply. [Doc. No. 32 at 2.]

[9] Petitioner's remaining IAC claims do not challenge the knowing and voluntary nature of his waiver, but only his counsel's performance after the entry of Petitioner's guilty plea. Accordingly, they too are barred by Petitioner's waiver. United States v. White, 307 F.3d 336, 340-44 (5th Cir. 2002) (holding that "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself. . . . [because the] opposite result would render waivers of appeal meaningless."); Pastoriza-Valerio v. United States, 2009 U.S. Dist. LEXIS 1388, at *16 (S.D. Cal. Jan. 9, 2009) (Petitioner waived "purported ineffective assistance claims because they are not directed to the voluntary or intelligent nature of his decision to enter a guilty plea.").

### V.     Certificate of Appealability

Under Federal Rule of Appellate Procedure 22(b), there is no appeal from the final order in a proceeding under § 2255 unless a "circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has failed to make such a showing. Accordingly, the Court **DENIES** Petitioner a certificate of appealability.

### CONCLUSION

For the reasons given above, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. The Court also **DENIES** Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

**DATED:** August 21, 2012

**IRMA E. GONZALEZ**
**United States District Judge**